Tracy **POTTER** et al., Plaintiffs,

v.

Ben **MEIER**, as Secretary of State of the State of North Dakota, et al., Defendants.

Civ. No. 1115.

United States District Court, D. North Dakota, Southwestern Division.

March 7, 1972.

**1354**

Thompson, Lundberg & Nodland, Bismarck, N. D., for plaintiffs.

Helgi Johanneson, Atty. Gen., Paul M. Sand, First Asst. Atty. Gen., Bismarck, N. D., for Secretary of State, and the other defendants except those filing separate answers.

## MEMORANDUM AND ORDER

VAN SICKLE, District Judge.

This complaint, as presented to the Court, at the outset raises two problems:

1. If it gets so far, is it a proper subject matter for the procedural techniques of a class action? At this time, we think the answer is yes.

2. Is this a matter to be handled by a Three Judge Court pursuant to 28 U.S.C.A. § 2281 and § 2284?

Initially, it is the duty of the United States District Judge where the case is filed to determine:

1. Whether there exists a substantial claim of unconstitutionality, and

2. The existence of a substantial question of unconstitutionality

must be determined by the allegations of the Bill of Complaint. Great Northern Railway v. Thompson 222 F.Supp. 573 (D.N.D.1963).

So, we turn to the complaint. The complaint premises its jurisdiction on 28 U.S.C.A. § 1331 (cases arising under the Constitution of the United States), § 1343 (civil rights and elective franchise), and § 2201 (declaratory judgments).

The complaint claims violations of the following constitutional provisions:

U.S. Constitution, Article IV, Section 2, (citizens of each state entitled to privileges of citizens of the several states).

U.S. Constitution, Article IV, Section 4, (the guaranty to every state of a republican form of Government).

U.S. Constitution, Amendment I, (freedom of speech).

U.S. Constitution, Amendment XIV, (protection of the privileges, immunities, and equal protection of a citizen of the United States against the action of a state).

U.S. Constitution, Amendment XXVI, (eighteen year olds entitled to vote).

The Plaintiffs are:

1. Tracy Potter who is 21 years of age, but was not 21 years of age on September, 1970, and, therefore, could not vote for precinct committeemen.

2. Alan Shepard who is not 21 years old, but has passed his 18th birthday, and was not 21 years old on September, 1970.

3. Richard Madson who is more than 21 years old, but was not a resident of North Dakota on September, 1970, and, therefore, could not vote for precinct committeemen at that time.

These persons desire to take a meaningful part in the 1972 election for President.

These three plaintiffs allege that they are representative of three classes of electors.

The cause of action claims a denial to the plaintiffs of an effective participation in the presidential nominating process, including the election of the North Dakota delegates to the Presidential nominating conventions of the major political parties. Effective participation is claimed to be secured and guaranteed by a right to vote, a right to an equal vote, the right to cast an effective and timely vote, and the right of political association in the electoral process leading to the selection of delegates to the major National political party conventions.

The objectionable feature of the relevant North Dakota Statutes is that precinct committeemen elected in the election of September, 1970, will elect the delegates to the National convention in June, 1972.

The gravamen of the action is that all persons who were not eligible, by age or residency, to vote in the primary election of September, 1970, but are eligible to vote by June, 1972, are, by the early election date for precinct committeemen, *denied the right to elect precinct committeemen who exercise the Presidential nominating function for the 1972 Presidential election.*

The relief sought is a determination that the state statutes which deal with the election of precinct committeemen, and the election of delegates to a state convention, which in turn elects delegates to the National nominating convention, are Federally unconstitutional. Further relief sought is the administration by the Federal Court of the state political processes so as to provide National nominating convention selection procedures that include the plaintiffs throughout their entirety.

To determine whether the allegations of the complaint raise a substantial question of constitutionality, we must now determine:

a) Whether the question is plainly unsubstantial because its unsoundness so clearly results from the previous decisions of the Supreme Court as to foreclose the subject.

(Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152). We find no decisions that foreclose the subject Or;

b) Whether the question is plainly unsubstantial because it is obviously without merit. (Ex parte Poresky, supra).

To apply this standard, we must look at the precinct committeeman selection and function as set out in the North Dakota Statutes.

16–04–01 NDCC provides:

"On the first Tuesday in September of every year in which a general election occurs, there shall be held in the various voting precincts of this state, in lieu of party caucuses and conventions, a primary election for the nomination of candidates for the following offices to be voted for at the ensuing general election: representative in Congress, state officers, county officers, district assessors, and the following officers for the years of their regular election: judges of the supreme court and district court, members of the legislative assembly, county commissioners, and United States senators. In special elections the nominations for the officers enumerated in this section shall be made as provided in this title."

16–17–01 NDCC provides:

"At the party primary election commencing with the year 1966, and each fourth year thereafter, there shall be elected as hereinafter provided by the qualified electors of each political party from each voting precinct, committeemen to represent such political party."

The precinct committeeman's term is four years (16–17–02 NDCC).

Vacancies in the office of precinct committeemen are filled by appointment by the precinct executive committee of the party (16–17–09 NDCC).

16–17–16 NDCC provides:

"Prior to the second Monday in June in each presidential election year

upon the call of the chairman the district committee of each district shall meet at a place designated by the chairman to elect delegates to a state party convention to be held as provided in this chapter. If the bylaws of the legislative district so provide, precinct committeemen may call a precinct caucus prior to the district meeting for the purpose of electing additional delegates to attend the district meeting. One delegate to the state convention shall be elected for each three hundred votes or majority fraction thereof cast in such district at the last preceding presidential election for the candidates for presidential electors of such party, but every district shall be entitled to at least one delegate. Delegates shall be electors of their district. If any delegate shall be unable to attend such convention, he shall designate in writing an alternate from the list of alternates selected at the district convention to attend and represent and act for him."

The state party convention in June of each Presidential election year:

1. Nominates Presidential electors, and

3. Elects the delegates to the National party convention (16–17–18 NDCC).

Michigan and North Dakota are claimed to be the only states which obstruct Presidential delegate selection by imposing early election dates at the crucial first level of the selective process.

The Michigan case is U.S. District Court for the Eastern District of Michigan, Southern Division, Civil No. 37094, Democratic State Central Committee, et al, plaintiffs, vs. Richard H. Austin, Secretary of State, et al, defendants.

There a Three Judge Court has been convened to hear a complaint which raises an issue comparable to the North Dakota issue.

As to the issue comparable to the North Dakota issue, the presiding judge has had this to say so far:

"The Court . . . also finds that the question whether permitting delegates selected in August, 1970, to be the delegates in the ensuing 1972 convention does require a showing of a compelling reason for so doing, we regard this as presenting a substantial federal constitutional question, and one which will require considerably more attention, but we regard this as a question of great substance."

(In fact, as the complaint shows in the Michigan case, delegates selected in August, 1970, reconvene in 1972 to elect delegates to the state convention.)

Whatever may be the factual pattern in Michigan, in North Dakota it is common knowledge that precinct committeemen are required to perform numerous local political functions throughout the period of their office. They must be fully organized, must handle funds, must assist in keeping vacancies in their ranks filled, must participate in political appointments. In fact, the problem is not so often how to select a committeeman from among the candidates, as it is how to find a qualified person who will accept an election or appointment. See Lynch v. Torquato, 3 Cir., 343 F.2d 370.

North Dakota is largely a rural state with problems of assembly created by the factors of great distances, variable weather and seasonal workloads.

A precinct committeeman is chosen in the primary election preceding the non presidential general election. He learns his job in the general election of November that same year. He is half way through his term at the time of the Presidential general election. He organizes for that election in the first half of his term, and repairs the damage, or firms up the victory, in the second half of his term.

The complaint alleges that the plaintiffs desire meaningful participation in the Presidential election process, but, then it assumes that the only meaningful participation is by running for, or casting a ballot for, the office of precinct committeeman. However, there

are many more effective ways to participate than merely to run for, or vote for, an office holder.

■ To be entitled to relief, the plaintiffs must show that the state act is intended to, or has the effect of, depriving a citizen of his constitutional rights. (See Bradley v. School Bd., 338 F.Supp. 67 (E.D.Va.1972)).

Federal Courts are hesitant to interfere in this area. They justify the policy of judicial abstention by talk of state sovereignty, (for discussion of this point, see Black's Dissent, South Carolina v. Katzenbach, 383 U.S. 301 at 358, 86 S. Ct. 803, 15 L.Ed.2d 769), of exacerbation, (Democratic St. Cent. Comm. v. Austin, E.D.Mich., Civil No. 37094, 25 Jan., 1972), of political question, (Baker v. Carr, 369 U.S. 186 at 209, 82 S.Ct. 691, 7 L.Ed.2d 663), of a lack of judicially discoverable and manageable standards, (Irish v. D.F.L. Party, 8 Cir., 399 F.2d 199 (1968)). This hesitancy seems the more desirable as we reflect in the common-sense realization that Federal overprotectiveness destroys the will and ability to exercise self government.

In this case, the plaintiffs must expect to obey reasonable traffic rules which assist them to get on the electoral merry-go-round. North Dakota Supreme Court Judges are elected for ten years. District Court Judges are elected for six years. The Governor is elected for four years. The County officers for four years. State Senators for four years. In each case, a newly qualified elector is denied temporarily the privilege of "meaningful participation" in the selection of that official, at least until the next election rolls around.

The need for, and function of, the Three Judge Court is to afford a procedural protection against an improvident state-wide doom by a Federal Court of a state legislative policy. Phillips v. United States, 1941, Okl., 312 U.S. 246, 61 S. Ct. 480, 85 L.Ed. 800. But, if a Three Judge Court is erroneously convened, the parties will lose, rather than gain time by the error. The Supreme Court will, where the Three Judge Court was improvidently called, refuse to review on the merits, and send the case back to the U. S. District Court for conventional hearing and review. (Phillips v. United States, Supra), thus gaining the "wise and often crucial adjudications of the courts of appeals". Allen v. St. Bd. of Elections, 393 U.S. 544 at 562, 89 S.Ct. 817 at 830, 22 L.Ed.2d 1 (1968).

■ In summary, we find that the plaintiffs' complaint does not raise a substantial question of constitutionality because it is obviously without merit.

This is a situation where time is important, and the Court concedes that its determination is not free from doubt. Therefore the Court believes that either party should have an opportunity to apply to the Court of Appeals for permission for an appeal to be taken from this Order, if they have a desire so to do, pursuant to the provisions of 28 U.S.C. A. § 1292(b). The Court therefore certifies as follows:

That it is of the opinion that the within order involves controlling questions of law as to which there are substantial grounds for difference of opinion and that an immediate appeal from the within interlocutory order of the Court may materially advance the ultimate termination of the litigation; and that either party should have the opportunity to apply to the Court of Appeals for the Eighth Circuit for permission to appeal to be taken from such order if either should so desire. Should such application for an appeal be made by either party and such permission be granted by the Court of Appeals, then further proceedings in this case shall be stayed until a determination of the appeal.

It is so ordered.