**William MOYER, Plaintiff,**

v.

**Dorothy NELSON, Gordon Duffield, Justices of the Peace, Polk County, Iowa, Ray A. Fenton, County Attorney, Polk County, Iowa, Defendants.**

**Civ. No. 10-56-C-1.**

United States District Court,
S. D. Iowa, C. D.

Feb. 26, 1971.

Donald A. Wine and Dan Johnston, Des Moines, Iowa, for plaintiff.

John Perkins and Philip F. Miller, Asst. County Atty., Des Moines, Iowa, for defendants.

G. Douglas Essy and Michael J. McLaughlin, State of Iowa, for intervenor.

## MEMORANDUM OPINION

Before VAN OOSTERHOUT, Circuit Judge, STEPHENSON, District Chief Judge, and HANSON, District Judge.

STEPHENSON, District Chief Judge.

This action is one instituted by William Moyer for injunctive and declaratory relief. At issue is the constitutionality of the Iowa justice of the peace fee system, the claim being that it is unconstitutional on the ground that the fee justice has a substantial pecuniary interest in the outcome of the litigation he handles. A district court of three judges has been convoked, oral argument has been heard, briefs and supporting affidavits have been submitted and the case is before us on the motion of Intervenor to dismiss.

The principal defendants are Dorothy Nelson and Gordon Duffield, Justices of the Peace, Polk County, Iowa, and Ray A. Fenton, County Attorney, Polk County, Iowa. The State of Iowa has been granted leave to appear herein as an intervening defendant.[1] Jurisdiction is premised on 28 U.S.C.A. §§ 1343, 2201 and 2281.

The background facts, naturally, are important. And, the specifics of the statutory scheme about which plaintiff complains deserve mention so that the case's nature is apparent. All this may be summarized as follows:

1. There is no real dispute as to the background facts. Plaintiff was arrested while operating a motor truck on Interstate 80 on August 18, 1969, for violation of § 327.6 of the Iowa Code.[2] He was taken promptly before defendant Nelson, the nearest or most accessible magistrate and a fee justice, where he entered a plea of not guilty and posted bond of $300. The matter was set down for trial for August 22, 1969.

2. Thereafter, on August 20, 1969, plaintiff filed an Affidavit for Change of Venue and the case was transferred to the docket of defendant Duffield, also a fee justice, where it is still pending.

3. By this action filed July 1, 1970, plaintiff seeks: (a) an order enjoining his prosecution in the court of Justice Duffield or in that of any other fee justice, and (b) an order declaring "the currently existing fee system of the Iowa Justice of the Peace courts as presently constituted illegal and unconstitutional under the Fourteenth Amendment to the Constitution of the United States."

4. With this factual background we look at the statutory scheme. Preliminarily we note that § 601.131, Iowa Code Annotated, 1966, sets forth the compensation of justices of the peace and provides that justices serving in townships of less than 10,000 population are compensated out of fees they collect, while those serving in larger townships are paid a fixed salary. We observe, however, that the fee justice's salary is not dependent on conviction. That is, the fee justice receives his compensation without regard to the outcome of the litigation which he handles.[3] Compare Bennett v. Cottingham, 290 F.Supp. 759 (Three-judge court, N.D.Ala.1969).[4] Of

---

1. The State of Iowa satisfied the conditions of Rule 24(a), F.R.Civ.P., 28 U.S.C.A., and is therefore entitled to intervene of right.

2. This section proscribes the operation of a truck or contract carrier within the State of Iowa without a permit issued by the Iowa State Commerce Commission.

3. § 601.130 provides that the fee justice shall be compensated for all fees due him out of the county treasury in the event prosecution fails or the person liable therefor cannot pay.

4. The line of demarcation between *Bennett* and this case, while readily apparent, is critical. In *Bennett* the court relied on the absence of any provision of Alabama law for the payment of fees in connection with charges based upon highway violations in the event of an acquittal or nolle

significance though, is the relationship between the compensation of the fee justice and the *volume* of business he transacts. For example, § 601.131(2) (a) permits and authorizes a fee justice serving in a township of more than four thousand but less than ten thousand population to retain the first $1200 of fees he collects, plus fifty percent of the remainder of fees he collects. Thus, the more business the fee justice can generate, the higher the amount of his compensation.

5. The pertinent Iowa statute dealing with the *place* of trial is § 321.485, and perhaps § 758.1, although on its face the latter purports to relate to a different situation. Of these, § 321.485, entitled "Notice to appear", deals specifically with the disposition of violators of Iowa traffic laws. This is a venue statute which empowers a peace officer having reasonable cause to believe that a person has violated any provision of the Iowa traffic law to: [a] immediately arrest such person and take him before *any* magistrate of the county in which the apparent violation occurred, or [b] without effecting an arrest, either: (1) issue a summons to appear in the court of *any* magistrate of the county in which the alleged violation occurred, or (2) prepare a memorandum of the alleged violation for use by the Department of Motor Vehicles.

Having reviewed the background facts and the relevant statutory materials we are in a position to make certain observations relative to plaintiff's claims:

(1) Plaintiff's position here, buttressed by affidavits,[5] comes down to this: the foregoing statutory scheme permits forum shopping by peace officers for "friendly" fee justices of the peace; that a peace officer, having this choice of forum, is encouraged to select only those fee justices who are most likely to re-turn convictions; that fee justices who do not please peace officers with high conviction rates are blacklisted and do not receive any business; that the fee system is so structured as to promote a fee justice's pecuniary interest in the *outcome* of cases before him because of the direct and substantial relationship between his compensation and the volume of business he transacts. In short, plaintiff contends that the fee system *in combination* with the choice-of-forum provisions of § 321.485, which vest peace officers with complete latitude as to choice of forum, is unconstitutional. The defendants urge, first, that plaintiff has failed to raise a substantial federal question. They argue, secondly, that plaintiff's failure to pursue available state remedies precludes him from proceeding in this Court. The defendants press upon us, finally, their argument that we should invoke the doctrine of abstention and thereby avoid proceeding to decision on the merits.

(2) Plaintiff's is an arrest situation. As to traffic arrests, § 321.485, at first reading, seems clearly to preserve for a peace officer acting thereunder, discretion as to place of trial. It is at this point, however, that § 758.1 takes on particular pertinency. By it a peace officer who effects an arrest of any type without a warrant must bring his arrestee before the *nearest or most accessible* magistrate in the county in which the arrest is made. Thus, as to the disposition of arrested persons generally, the arresting peace officer has little or no discretion with regard to the magistrate before whom his arrestee is to be taken.

■ (3) These differing requirements naturally present some element of confusion as to the Iowa legislature's basic attitude toward traffic arrestees. And, we can find no definitive statement as to the interrelationship between these

prosequi. The Court concluded that since justices were remunerated only in the event of conviction the statutory scheme there under attack must fail.

5. It has been stipulated by the parties that evidence would be offered by affidavits and that the affiants, if called, would testify in accordance with their respective affidavits.

two statutes by the Supreme Court of Iowa. We suspect, however, that this inconsistency has simply been overlooked by the legislature. We feel that the correct interpretation of these statutes, and the one intended by the Iowa legislature, is that §§ 758.1 and 321.485 are to be construed with reference to each other, and that § 758.1 is to be interpreted as a restriction on § 321.485, thereby compelling an arresting peace officer to bring his traffic arrestees before the nearest or most accessible magistrate. We think too, that the Supreme Court of Iowa would reach this result. All this being so, we doubt that a peace officer who effects a traffic arrest has any meaningful discretion as to forum.

(4) From the foregoing it follows, it seems to us, that if § 321.485 permits forum shopping at all, it does so in summons situations only. Here, however, we do not have a summons situation. We have, instead, a strict compliance with § 758.1: an arrest coupled with a prompt taking before the nearest or most accessible magistrate. And, plaintiff subsequently obtained a change of venue to the court of a fee justice other than the one chosen by the peace officer.[6] We are therefore immediately confronted with an important question concerning the litigative posture of this plaintiff. In short, is he a person harmed by the supposed wrong?

█ (5) It seems clear that Moyer has an injury of the sort requisite to give him standing if on the basis of his substantive contentions there exists a nexus between the status asserted by him and the claim he presents. Flast v. Cohen, 392 U.S. 83, 102, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968) and Doe and Roe v. Scott, 321 F.Supp. 1385, 1387–1388 (Three Judgment Court, N.D.Ill.1971). Moyer suggests and argues (a) that the proclivity to convict is as great in arrest cases as in summons cases because, (b) to obtain the choice-of-forum (summons) cases, a fee justice must "cooperate" with peace officers in all cases. Thus, as to himself, Moyer seems to be saying that the action he challenges here has caused injury in fact. Compare *Flast, supra,* and *Doe and Roe, supra,* with Association of Data Processing v. Camp, 397 U.S. 150, 151–152, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970) and Barlow v. Collins, 397 U.S. 159, 164, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970).

(6) Although from the standing aspect we regard Moyer's position as being at the law's edge, we recognize that the nature and force of his attack goes to the practices of all fee justices in arrest and summons cases alike. Thus, all in all, and in spite of some deficiencies in his posture here, we regard Moyer's factual situation as being within the general atmosphere of *Flast, Association of Data Processing* and *Barlow.*

We raise on our own a serious and important question concerning the jurisdiction and administration of statutory three-judge courts convoked under 28 U.S.C.A. §§ 2281 and 2284.

We repeat that the complaint before us requests injunctive and declaratory relief on the ground, essentially, that the Iowa justice of the peace fee system is contrary to the Fourteenth Amendment of the Constitution. Chief District Judge Stephenson, to whom this case was initially assigned, out of an abundance of caution, made the preliminary determination that plaintiff's claims regarding the challenged state statutes presented questions which were solely within the competency of a statutory three-judge court. Accordingly, a district court of three judges was convoked pursuant to 28 U.S.C.A. § 2284.

█ We feel that a careful reading of the pleadings, briefs and supporting affidavits clearly demonstrates that Moyer's basic claim is that certain state and local officials are administering a constitutional statutory scheme in an unconstitutional manner. That is, Moyer posits no quarrel with the constitutionality of the statutory scheme on its face, but assails instead, its application and mis-

---

6. Compare § 761.2, Iowa Code Annotated, 1966, with § 762.13, Iowa Code Annotated, 1966.

use by state and local officials. Given this form of attack, and recognizing that it is possible to enjoin the appropriate state and local officials without holding the statutory scheme unconstitutional, we conclude that a district court of three judges is neither necessary nor required to hear and determine the claims presently before us. See Phillips v. United States, 312 U.S. 246, 61 S.Ct. 480, 85 L. Ed. 800 (1941) and Ex Parte Bransford, 310 U.S. 354, 359–361, 60 S.Ct. 947, 84 L.Ed. 1249 (1940). The Court noted in *Phillips*:

"Some constitutional or statutory provision is the ultimate source of all actions by state officials. But an attack on lawless exercise of authority in a particular case is not an attack upon the constitutionality of a statute conferring the authority even though a misreading of the statute is invoked as justification. At least not within the Congressional scheme of [the predecessor of § 2281]." 312 U.S. at 252, 61 S.Ct. at 484.

The three-judge court statutes place a heavy burden on the federal judiciary and therefore, since *Phillips, supra,* are to be construed as enactments technical in the strict sense of the term and to be applied as such. See also, Ex Parte Collins, 277 U.S. 565, 567, 48 S.Ct. 585, 72 L.Ed. 14 (1928). We feel that the cases to which we have just referred, together with the nature of the claim before us, establish without room for argument that this case is beyond the spirit of our statutory jurisdiction. We therefore remand the case to Chief District Judge Stephenson for appropriate action. See Marcello v. Kennedy, 194 F.Supp. 748, 749 (Three-judge court, D.C.1961) and Krebs v. Ashbrook, 275 F.Supp. 111, 118 (Three-judge court, D.C.1967), aff'd per curiam, 132 U.S.App.D.C. 176, 407 F.2d 306 (1968), cert. denied, 393 U.S. 1026, 89 S.Ct. 619, 21 L.Ed.2d 570 (1969).

We observe that because of the case's nature, because of the sensitiveness of the issues involved, and because of the impropriety painted by the supporting affidavits, we ourselves would have little difficulty, if the determination was ours to make, in finding that the practice that has developed among peace officers and fee justices under the statutory scheme now before us is so obviously unfair as to be worthy of appropriate action. We have little doubt that forum shopping by peace officers exists; that fee justices who do not "please" peace officers are "blacklisted" and receive little or no business; that some peace officers select certain fee justice courts in order to obtain the kind of justice they desire. We strongly suspect, also, that under appropriate circumstances, the Supreme Court of Iowa would have little hesitancy in correcting the misuse of this statutory scheme.

## MEMORANDUM AND ORDER

STEPHENSON, Chief Judge.

This matter has been remanded to this Court for appropriate action by a district court of three judges convoked pursuant to 28 U.S.C.A. § 2284. The background facts and relevant statutory materials are detailed in the remand opinion. No useful purpose is served in again setting forth these important facts. The Court therefore refers to those facts here only as it becomes necessary so to do in considering the issues before it.

The case presents the following questions: (1) is plaintiff entitled to an order from this Court "enjoining and preventing" the defendants herein from "prosecuting and adjudicating the alleged violations by the plaintiff of the Iowa statutes described herein in Iowa Justice of the Peace courts as presently constituted", and (2) is plaintiff entitled to a "declaratory judgment declaring the currently existing fee system of the Iowa Justice of the Peace courts as presently constituted illegal and unconstitutional under the Fourteenth Amendment to the Constitution of the United States.".

After careful consideration of the pleadings, briefs, supporting affidavits

and the decided cases, the Court considers these questions in order:

■ (1) The claim for injunctive relief. To grant the type of injunctive relief which plaintiff requests this Court must enjoin a *pending state* criminal prosecution.

It is settled, of course, that the anti-injunction statute, 28 U.S.C.A. § 2283,[1] is comprehensive in its prohibition unless a case presents facts which bring it within one of the recognized exceptions. Euge v. Smith, 418 F.2d 1296, 1298 (8 Cir. 1969). And, § 2283 is deemed particularly appropriate where, as here, it is sought to restrain a pending state criminal prosecution. Cameron v. Johnson, 390 U.S. 611, 618, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968). Plaintiff, therefore, cannot obtain injunctive relief of the type he requests here unless the facts are such as to make applicable one of the exceptions to § 2283.

Plaintiff concedes that his is not a case within any of the exceptions contained in the language of the statute itself. He relies, instead, on the case, Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). That case involved an excessively broad statute regulating expression. The Court was asked to enjoin threatened, in contradistinction to pending, state criminal prosecutions for alleged violations of the statute. The Court rejected the applicability of the bar of § 2283 on the theory that the overly broad and vague regulations of expression there under challenge could have a "chilling effect" on the exercise of First Amendment rights. In so doing, it was moved to observe that the case presented a situation which involved the "impropriety of [state officials] invoking the statute in bad faith to impose continuing harassment in or-

der to discourage appellants' [First Amendment] activities."

The Court thinks that the exception to § 2283 carved out in *Dombrowski* is for use in cases involving stronger and distinguishable facts. Here, there is no harassment, intimidation or oppression. Here, plaintiff's First Amendment rights are not imperiled by calculated and deliberate state assault. There is, instead, an arrest and a prosecution in good faith. All this being so, the Court is of the view that the rule of *Dombrowski* is inapplicable to the facts presented by this case.[2]

The Court is aware, finally, of the important case, Atlantic Coast Line Railroad Co. v. Brotherhood of Locomotive Engineers et al., 398 U.S. 281, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970), in which Mr. Justice Black, in denying enforcement of a Federal District Court injunction against State Court proceedings pending appeal, said:

"Any doubts as to the propriety of a federal injunction against state court proceeding should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy. The explicit wording of § 2283 itself implies as much, and the fundamental principle of a dual system of courts leads inevitably to that conclusion." 398 U.S. at 297, 90 S.Ct. at 1748.

In applying this sound principle to the facts here, the Court concludes that plaintiff's attempt to invoke federal injunctive relief encounters an insurmountable barrier in § 2283. The Court therefore holds that § 2283 deprives it of jurisdiction to render the injunctive relief plaintiff requests. *Euge, supra,* at 1299.

■ (2) The claim for declaratory relief. Plaintiff asks this Court to gauge

---

1. The statute's language is narrow and precise. It reads:
   "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

2. Younger v. Harris and related cases, 401 U.S. ——, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) although not available for extensive study, appear to be supportive of the Court's decision herein.

the validity of certain practices which have developed under a state statutory scheme, the constitutionality of which have never been assessed by the Supreme Court of Iowa. Thus, the case presents another chapter in the controversy over the appropriate relationship between a federal district Court and the Supreme Court of the State in which it sits. See McGuire v. State of Iowa, 320 F.Supp. 243 (S.D.Iowa 1970).

The Court is impressed by: (a) this fact situation presents issues of state policy and interpretation peculiarly within the domain of state judicial control; (b) the Attorney General for the State of Iowa suggests and argues that there is at least one state remedy by which plaintiff can effectively put his claims before the Supreme Court of Iowa; (c) the Attorney General asserts that he would welcome a litigation of the issues presented here in the Supreme Court of Iowa; (d) Rule 374 of the Iowa Rules of Civil Procedure vests the Supreme Court of Iowa with supervisory and administrative control over all trial courts in the State. It is therefore at least arguable that upon proper presentation, the Supreme Court of Iowa on its own could deal with the problem presented here; (e) if this Court acted favorably on plaintiff's complaint, the only effective remedy would be its order enjoining plaintiff's pending state criminal prosecution. Such a result is clearly proscribed by the anti-injunction statute; and (f) there is here no frontal assault levied on the statutory scheme; there is, instead, an attack on the interaction of *certain* peace officers and *certain* fee justices who purport to act under the color of an otherwise constitutional statutory scheme. In such a case, federal judicial intervention is, perhaps, too strong a medicine.

While any one of these factors standing alone would probably not be persuasive, together they present, it seems to the Court, a total situation of significance. In the aggregate they give to the Court a portrait of a situation in which everything, other than the existence of a non-urgent state case which the Iowa Court has never been called on to resolve, fades under the glare of careful analysis. This being so, the doctrine of abstention becomes particularly pertinent.

The Supreme Court cases on which this doctrine pivots, of course, are Railroad Commission of Texas et al. v. Pullman Company et al., 312 U.S. 496, 501, 61 S.Ct. 643, 85 L.Ed. 971 (1941) and Burford et al. v. Sun Oil Co. et al., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). These cases recognize that there may be circumstances under which a federal district court may decline to proceed to decision though it has jurisdiction. Since these decisions, the doctrine, speaking generally, has become a part of federal jurisprudence. It has been said that the doctrine has for its purpose the avoidance of needless friction between federal pronouncements and state policies. Reetz v. Bozanich, 397 U.S. 82, 89, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970). It is designed to provide federal courts with a procedural vehicle by which they can yield rather than encroach upon matters properly cognizable by state courts. Despite some confusion as to the doctrine's precise boundaries, [compare Zwickler v. Koota, 389 U.S. 241, 248, 88 S.Ct. 391, 395, 19 L.Ed.2d 444 (1967), (abstention is appropriate "only in narrowly limited 'special circumstances,'") with State of Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (January 19, 1971), (abstention only applies where "the issue of state law is uncertain")] the Court concludes that where, as here, there is a strong probability that state question adjudication in the courts of Iowa would eliminate the necessity for this Court to pass upon plaintiff's Fourteenth Amendment claim, abstention as to his request for declaratory judgment is warranted. The Court therefore holds that the complaint herein should be dismissed so that the Supreme Court of Iowa, as the final expositor of Iowa law, can on its own deal with the practices which have developed under the statutory scheme here under

challenge, free from federal intervention.

The peace officers and fee justices whose conduct has formed the predicate for this action know who they are. Let them in no way misunderstand the significance of today's holding. This Court does not condone violations, where they exist, of the due process rights of traffic violators. It does not approve forum shopping as a tool to obtain convictions in traffic cases. It condemns the "blacklisting" of "uncooperative" fee justices. In short, the historical development of practices under the statutory scheme under challenge herein is too damaging to afford the participating peace officers and fee justices much assurance—as far as this Court is concerned—in further near-the-line activity.