Tracy **POTTER** et al., Appellants,

v.

Ben **MEIER** et al., Appellees.

No. 72–1168.

United States Court of Appeals, Eighth Circuit.

April 4, 1972.

Irvin B. Nodland, Bismarck, N. D., for appellants.

Paul M. Sand, First Asst. Atty. Gen., Bismarck, N. D., for appellees.

Before HEANEY and STEPHEN-SON, Circuit Judges, and NEVILLE, District Judge.

PER CURIAM.

Three residents of North Dakota, all of whom allege that they are qualified to vote in primary and general elections in their respective North Dakota counties, instituted this suit seeking a declaration that selected provisions of the North Dakota election laws violate the Twenty-Sixth Amendment[1] and other provisions of the United States Constitution and an injunction against enforcement of these provisions by the North Dakota Secretary of State. Inasmuch as the suit is one to restrain the enforcement and execution of North Dakota statutes by a State officer on federal constitutional grounds, the convening of a statutory court of three judges was requested pursuant to 28 U.S.C. §§ 2281, 2284. Federal jurisdiction was invoked under 28 U.S.C. § 1343(3).[2] The suit is substantively based upon 42 U.S.C. § 1983, which authorizes a civil action on the part of a person deprived, under State law, "of any rights, privileges, or immunities secured by the Constitution . . ." The District Court, *sua sponte*, refused to convene a three-judge court on the ground that the complaint did not present a substantial federal question. That finding is challenged on this interlocutory appeal under 28 U.S.C. § 1292(b).

In essence, the plaintiffs allege that the timeliness of the method by which North Dakota chooses its delegates to the national political party conventions is violative of the Twenty-sixth Amendment in that they are denied the opportunity to participate in the selection of candidates for the offices of President and Vice-President of the United States. Briefly stated, North Dakota law provides for the election of precinct committeemen at the party primary election every fourth year commencing with 1966.[3]

The precinct committeemen, together with the nominees for, and members of, the legislative assembly of each party, constitute the party's district committee.[4] Prior to the second Monday in June in each presidential election year, the district committee is convened for the purpose of electing delegates to the State party convention.[5] These delegates, and in some districts additional delegates chosen at precinct caucuses, elect delegates to the State conventions.[6] The plaintiffs assert that all persons who were not eligible by age or residency to vote in the September 1970 primary elections, but who reach 18 years of age and/or establish residency by June 1972 are, "by the early, untimely election date set for the election of precinct committeemen, denied the right to elect precinct committeemen exercising the Presidential nominating function," and that "by reason of the enactment of the Twenty-sixth Amendment and because of the untimely election statutes of North Dakota . . ., approximately 80,000 persons will be denied their constitutional rights" in the 1972 presidential electoral process.

1. U.S.Const. amend. XXVI, provides in pertinent part:
   "The right of citizens of the United States, who are eighteen years of age or older, to vote shall not be denied or abridged by the United States or by any State on account of age."

2. The plaintiffs also asserted federal jurisdiction under 28 U.S.C. § 1331. Given the absence of a jurisdictional amount allegation, that section will not support federal jurisdiction over the claim. See Lynch v. Household Finance Corp., 405 U.S. ——, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972).

3. § 16–17–01, N.D.C.C.

4. § 16–17–09, N.D.C.C.

5. § 16–17–18, N.D.C.C.

6. § 16–17–18, N.D.C.C. It appears from the record that on January 22, 1972, the North Dakota Democratic-Nonpartisan League Party adopted new By-Laws which require that all delegates to District Conventions be selected by open precinct caucuses in the Presidential election year. We leave to the three-judge court the task of determining the effect of these By-Laws on this lawsuit.

This complaint was filed November 15, 1971. The defendants answered December 2, 1971. On March 8, 1972, the District Court, in an unreported memorandum-order, and on the basis of Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1934), concluded that the complaint "is obviously without merit," and, hence, did not frame a substantial federal question. More particularly, the District Court found, in effect, that North Dakota's interest in providing for the election of its precinct leadership every fourth year—the interest being in ensuring that committeemen receive the experience and seasoning essential to the responsible discharge of their numerous and important party functions in a presidential election year—overrode the plaintiffs' otherwise legitimate right to participate in the selection of that leadership. The District Court emphasized that the precinct committeeman receives much of his training during the interval between his election and the time delegates are selected for the national party convention, and it voiced the fear that to re-structure and undo this system would be to work irreparable damage to the internal machinery of the party organization. The District Court then proceeded to conclude that while the plaintiffs conceivably were effectively deprived of the opportunity to participate in the presidential nominating function in the manner alleged, there were other, and perhaps more effective avenues of meaningful participation open to them so that, on balance, they sustained no substantial constitutional harm.

■■■ This appeal focuses solely on the propriety of the District Court's refusal to request the designation and impaneling of a statutory three-judge court, 338 F.Supp. 1353. As to this, the ground rules are firmly established. Whenever a substantial constitutional attack is mounted, on federal grounds, against the facial validity of a State statutory scheme, the relief sought is injunctive in nature, and a State officer is named as a party defendant, 28 U.S.C. § 2281 requires that a three-judge court be convened to hear and determine the merits of the claim. Where, as in this case, federal subject matter jurisdiction is not premised upon diversity of citizenship, the question of whether the federal constitutional issue is substantial is jurisdictional and, consequently, within the competence of a single district judge to decide. Thus, that a single district judge is empowered to dismiss the complaint where the federal constitutional question is plainly insubstantial, "either because it is 'obviously without merit' or because 'its unsoundness so clearly results from the previous decisions of th[e] [C]ourt as to foreclose the subject and leave no room for the inference that the question sought to be raised can be the subject of controversy'" is clear and well settled.[7] What is unclear, however, is the meaning and scope of the obviously-without-merit standard.[8] Whether that standard was correctly applied in this case is the narrow issue now before us.

■■■ The plaintiff, alleging that by means of a long established statutory procedure providing for the election of precinct committeemen every fourth year, they and those whom they purport

7. Ex Parte Poresky, *supra*, p. 32 of 290 U.S., p. 4 of 54 S.Ct. See also Swift & Co. v. Wickham, 382 U.S. 111, 115, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965); California Water Service v. City of Redding, 304 U.S. 252, 255, 58 S.Ct. 865, 82 L.Ed. 1323 (1938); Herald Company v. Harper, 410 F.2d 125, 127 (CA8 1969); and Weir v. United States, 310 F.2d 149, 152 (CA8 1962). But cf. 28 U.S.C. § 2284(5). For the converse of this rule, *viz.*, that a single district judge need not convene a three-judge court when the defense of constitutionality is frivolous, see Bailey v. Patterson, 369 U.S. 31, 33, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962).

8. See, for example, Green v. Board of Elections of City of New York, 380 F.2d 445 (CA2 1967), where, at p. 448, Judge Friendly states "judges have not been fitted with identical lenses for detecting just when lack of merit is 'obviously' such."

gap

to represent are denied rights accorded them by the Twenty-sixth Amendment, find in that Amendment a requirement that they be permitted to participate in the presidential nominating function. While we express no view as to what should be the ultimate disposition of the claim it is our conclusion that it is not dismissable, for three-judge court purposes, as obviously without merit. For us, the determination of the substantiality of a constitutional issue is not unlike the issue presented by a statute which lies somewhere between clear constitutionality and clear unconstitutionality. In such a case, the question is one of degree, "of drawing a line where no important distinction can be seen between the nearest points on the two sides, but where the distinction between the extremes is plain." Klein v. Board of Tax Supervisors of Jefferson County, Kentucky, 282 U.S. 9, 23, 51 S.Ct. 15, 75 L. Ed. 140 (1930). In this broad sense, cases such as Jenness v. Fortson, 403 U. S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971); Whitcomb v. Chavis, 403 U.S. 124, 91 S.Ct. 1858, 29 L.Ed.2d 363 (1971); and Oregon v. Mitchell, 400 U. S. 112, 91 S.Ct. 260, 27 L.Ed.2d 272 (1970), clearly reveal that questions which touch and concern deprivation or dilution of the plenary exercise of the presidential franchise are not, for whatever reason, plainly insubstantial.[9] Moreover, the very nature of the substantive attack in this type of case seems to us to emphasize the appropriateness of examination in the first instance by a statutory panel of three judges "to allow a more authoritative determination and less opportunity for individual predilection in sensitive and politically emotional areas." Swift & Co. v. Wickham, n. 7, *supra*, p. 119 of 382 U.S. p. 263 of 86 S.Ct. Finally, we note that there was not pending any motion to dismiss underlying the District Court's order. Nor did the defense specifically contest the merits of plaintiffs' three-judge request. The District Court made its ruling by virtue of its own independent examination of the issues presented. There is, to be sure, a duty on the part of a District Court to carefully scrutinize a three-judge application with a view toward ferreting out those requests that are bottomed upon plainly insubstantial constitutional claims, and to thereby avoid the needless assemblage of three busy judges. But in our view, a finding of insubstantiality should result only where the parties have addressed themselves to the issue and after all aspects of the issue have been thoroughly ventilated. At the very least, a plaintiff should be afforded the opportunity to demonstrate that he meets the substantiality test. Such an opportunity was not afforded the plaintiffs in the instant case.

We conclude that the constitutional question is substantial, that the complaint at least formally alleges a basis for equitable relief, and that the case otherwise comes within the requirements of the three-judge statute.[10] The order of the District Court is vacated and the case is remanded for expeditious action consistent with the views here expressed.

9. See also, Bode v. National Democratic Party, 452 F.2d 1302 (C.A.D.C.1971) and State of Georgia v. National Democratic Party, 447 F.2d 1271 (C.A.D.C. 1971).

10. Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 715, 82 S.Ct. 1294, 8 L.Ed. 794 (1962).