CENTURY 21 SHOWS, INC., et al.,
Plaintiffs,

v.

STATE OF IOWA et al., Defendants.
Civ. No. 72–179–2.

United States District Court,
S. D. Iowa, C. D.

Aug. 12, 1972.

Harry Haskins, John A. McClintock, Ronald A. Riley, Hansen, Wheatcraft & McClintock, Des Moines, Iowa, for plaintiffs.

Richard C. Turner, Atty. Gen., John E. Wietzke, Asst. Atty. Gen., Kevin Maggio, Mary Royer, Des Moines, Iowa, for defendants.

## MEMORANDUM ORDER

Before STEPHENSON, Circuit Judge, VAN PELT, Senior District Judge, and HANSON, Chief District Judge.

STEPHENSON, Circuit Judge.

Plaintiffs are the suppliers and operators of midway shows, rides, and concessions at various fairs in the State of Iowa. On June 22, 1972 they instituted in the Polk County, Iowa District Court a lawsuit seeking a declaration that hoop-la, balloon dart, bear pitch, basketball shoot, football throw, shooting galleries, six cat game and milk bottle game, fishpond game, block color group, tic-tac-toe, shooting waters, huff and puff, dragline, and fool the guesser do not fall within those portions of I.C.A. Chapter 726 which make criminal the playing of any game for a money consideration or for other property of any value. They premised the claim for declaratory relief on the theory that these activities do not constitute "gambling", but require skill and dexterity in achieving the objective underlying each. They did not explicitly call into question the constitutionality of a single statute comprising Chapter 726.

After a plenary bench trial the District Court, on July 17, 1972, denied the requested relief, holding that the enumerated "games" fell squarely within the conduct sought to be proscribed by Chapter 726. From that decision the plaintiffs lodged a direct appeal in the Supreme Court of Iowa, and sought a Stay of the underlying judgment pending final adjudication of the appeal. The Supreme Court, in a brief and unpublished order, denied the request for a Stay and refused to enjoin the Iowa Attorney General from initiating prosecutions under the statutes pending disposition of the appeal. The merits of the appeal, however, remain for Supreme Court adjudication.

Thirteen days after the Supreme Court denied interim equitable relief, the plaintiffs commenced the present civil rights action.[1] They requested in the alternative either preliminary injunctive relief pending final disposition of the State appeal, or a declaration that

---

§§ 726.1 and 726.3 are impermissibly vague under standards of the Fourteenth Amendment. In view of the nature and force of the federal constitutional attack, and because the plaintiffs sought ultimately to enjoin a State official from enforcement of a State statute of statewide application, this statutory three-judge court was designated and impaneled. 28 U.S.C. §§ 2281, 2284. See generally, Potter v. Meier, 458 F.2d 585, 588 (CA8 1972). Some three hours before this matter was heard the defense filed a motion to dismiss and a supporting brief.

■■■ Federal courts sit not to supervise or frustrate good faith State judicial proceedings but to enforce and protect federally protected rights. As a general proposition, when it is alleged that those rights have been violated by the application of State legislation, but there are questions of State law that, after construction by the authoritative State tribunal, may remove the asserted infirmity, a federal court will stay its hand while the parties resort to that forum for adjudication of the State questions. Railroad Commission v. Pullman Co., 312 U.S. 496, 500–501, 61 S.Ct. 643, 85 L.Ed. 971 (1941), and Reetz v. Bozanich, 397 U.S. 82, 85–87, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970). This principle has been clothed with especial importance when federal constitutional adjudication is sought during the pendancy of a State judicial proceeding. Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L. Ed.2d 669 (1971), proscribes federal courts from enjoining ongoing State criminal proceedings where there is no showing that those proceedings have been initiated in bad faith. In Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971), it was held that defendants in pending State criminal proceedings are precluded from obtaining federal declaratory relief on the constitutionality of the statute under which they are charged. Although neither *Younger* nor *Samuels* controls this case —because they deal only with the propriety of federal declaratory or injunctive relief while State criminal proceedings are pending—the implications of such precedents are weighty.

■■■ We recognize that Iowa law enforcement · officials have yet to act against any individual who has engaged in the playing of one or more of the specified games. Thus in this narrow sense there does not exist a pending State criminal proceeding which would be disrupted by federal judicial action. But the plaintiffs have themselves initiated State civil proceedings which have not as yet moved to final judgment. We cannot, at the appellate stage of those important and perhaps dispositive proceedings, view our favorable action on either of the alternative requests for relief as amounting only to a minimal interference with State judicial activity.[2] So to conclude would be to exalt formal logic at the expense of the sensitivities of the problem involved. Moreover, such a result would be fundamentally at odds with thirty years of federal abstention jurisprudence. We accordingly hold that we are compelled to abstain from granting any relief until the Supreme Court of Iowa disposes of the plaintiffs' appeal. Harrison v. N.A.A.C.P., 360 U. S. 167, 176–178, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959); Railroad Comm'n v. Pullman, *supra*, p. 500 of 312 U.S., p. 643 of 61 S.Ct., and McGuire v. State of Iowa, 320 F.Supp. 243, 246 (SD Iowa 1970). Cf. Lake Carriers' Assn. v. MacMullan, 406 U.S. 498, 92 S.Ct. 1749, 32 L.Ed.2d

2. The dissent concedes that "it is only too readily apparent that [interim injunctive relief] is not available to the plaintiffs in State Court, for Iowa's highest court has just denied them temporary relief." See *post*, at 1054. It is this factor which, for the dissent, serves to distinguish the conventional abstention factual setting from that present here. The distinction is evanescent. When an interlocutory issue has been so squarely disposed of by a State court of last resort, federal intermeddling is every bit as inappropriate as is the premature adjudication proscribed by traditional abstention doctrine.

257 (1972); Glenn v. Field Packing Co., 290 U.S. 177, 54 S.Ct. 138, 78 L.Ed. 252 (1933); Leiter Minerals, Inc., v. United States, 352 U.S. 220, 228–229, 77 S.Ct. 287, 1 L.Ed.2d 267 (1957), and Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25, 27–30, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959). See also Moyer v. Nelson, 324 F.Supp. 1224, 1230–1232 (SD Iowa 1971). *Semble*, Mitchum v. Foster, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972); Murel v. Baltimore City Criminal Court, 407 U.S. 355, 92 S.Ct. 2091, 32 L.Ed.2d 791 (1972); Lynch v. Household Finance Corp., 405 U.S. 538, 552–556, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972), and Parisi v. Davidson, 405 U.S. 34, 41–42, 92 S.Ct. 815, 31 L.Ed.2d 17 (1972). Assuming, without deciding, this complaint frames a substantial constitutional question, we will retain jurisdiction and deny the defense motion to dismiss.

HANSON, Chief District Judge (dissenting).

The Court today has decided to withhold the exercise of its jurisdiction until the Supreme Court of Iowa has finally determined the underlying State issues in this cause. I believe the use of the doctrine of abstention in this instance is untenable, improvident and unconscionable.

The sole question before this Court at this juncture is whether Richard Turner, Attorney General of Iowa, should be temporarily enjoined from enforcing against the plaintiffs [1] Iowa Code, Sections 726.1 & .3 with respect to certain carnival games outlined in the Complaint. Plaintiffs allege that certain parts of the Code provisions are vague and overbroad, thus offending the Fourteenth Amendment to the Constitution of the United States. Plaintiffs further allege that the Attorney General enforces or threatens to enforce these statutes in an arbitrary, capricious, and discriminatory manner and in bad faith, in violation of the Fourteenth Amendment.

On June 22, 1972, the plaintiffs initiated an action in the Iowa District Court in and for Polk County seeking a declaratory judgment that the games at issue in this lawsuit were not within the contemplation of Iowa Code, Sections 726.1 & .3. On June 29, 1972, the district judge granted a temporary injunction for twenty days restraining the Attorney General from enforcing the statutes with respect to the games. But on July 17, 1972, the district judge entered a declaratory judgment denying the relief sought by the plaintiffs and holding that the games in controversy were in violation of Sections 726.1 & .3. Plaintiffs appealed to the Supreme Court of Iowa and sought an order temporarily staying enforcement of the statutes with respect to the games until the Supreme Court could decide the case on the merits. On July 25, 1972, the Supreme Court of Iowa denied the temporary stay for reasons unarticulated.[2] Plaintiffs allege and it is not disputed that the Supreme Court of Iowa cannot reach the case for hearing on the merits until at least December of 1972.

1. The majority opinion states that the plaintiffs are suppliers and operators of midway shows, rides, and concessions of various fairs in Iowa. Although two of the plaintiffs in this action can be so classified, the third plaintiff is an association consisting of the 99 county fairs and the 4 district fairs in the State of Iowa. Much of the evidence before this Court relates to the very serious and extensive harm these fairs are suffering as the result of the Attorney General's recent interpretation of Chapter 726, declaring the game concessions involved in this case illegal.

2. Although this suit was commenced 13 days after the denial of a temporary stay order by the Supreme Court of Iowa, counsel for the plaintiffs approached me only 3 days after the denial about granting a temporary restraining order, and dogged my tracks up to and including the day this suit was filed. Any delay in filing this action was due to my reluctance to proceed without a three-judge hearing. Plaintiffs have certainly been diligent in attempting to protect their rights.

I do not dispute that the doctrine of abstention dictates that this Court delay deciding the constitutional issues in this lawsuit until the Supreme Court of Iowa makes a final determination of the case before it. Albertson v. Millard, 345 U.S. 242, 73 S.Ct. 600, 97 L.Ed. 983 (1953). Preliminarily to any determination of the issues of vagueness or overbreadth of Sections 726.1 & .3, the Court must determine the perimeters of the Statutes. It is very possible that the State court could construe the language in these statutes at issue there and here in a manner that would eliminate the necessity of deciding the constitutional challenge here. Furthermore, it is possible that the Supreme Court could in the case now pending before it, order the Attorney General to enforce the statutes in such a manner so as to moot this lawsuit entirely. The Supreme Court of Iowa has never interpreted the language that the plaintiffs find offensive in these statutes. The language is clearly subject to varying interpretation.

"Where resolution of the federal constitutional question is dependent upon, or may be materially altered by, the determination of an uncertain issue of state law, abstention may be proper in order to avoid unnecessary friction in federal-state relations, interference with important state functions, tentative decisions on questions of state law, and premature constitutional adjudication. . . . The doctrine . . . . contemplates that deference to state court adjudication only be made where the issue of state law is uncertain." Harman v. Forssenius, 380 U.S. 528, 534, 85 S.Ct. 1177, 1182, 14 L.Ed.2d 50 (1965).

While I do not doubt that this Court should abstain from deciding the merits of this case until the Supreme Court of Iowa has rendered final decision in the cause now before it, I firmly believe that the doctrine of abstention is no reason for refusing to grant the plaintiffs temporary injunctive relief now.

Abstention is an equitable doctrine and is solely the product of federal decisional law. Baggett v. Bullitt, 377 U.S. 360, 375, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964); Railroad Comm'n v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). It is not an automatic rule, and courts must determine on a case-by-case basis whether the "special circumstances" prerequisite to its application exist. Baggett v. Bullitt, supra. The foundation for this doctrine is the principle of federal-state comity. Harman v. Forssenius, supra. The Supreme Court of the United States has recently said, "Under accepted principles of comity, the court should stay its hand only if the relief the petitioner seeks . . . . would also be available to him with reasonable promptness and certainty through the machinery of the [coexisting] judicial system. . . ." Parisi v. Davidson, 405 U.S. 34, 41, 92 S.Ct. 815, 820, 31 L.Ed.2d 17 (1972), citing Griffin v. County School Board of Prince Edward County, 377 U.S. 218, 229, 84 S.Ct. 1226, 12 L.Ed.2d 256 (1964); Davis v. Mann, 377 U.S. 678, 690–691, 84 S.Ct. 1441, 12 L.Ed.2d 609 (1964); Lucas v. Forty-Fourth General Assembly of Colorado, 377 U.S. 713, 716–717, 84 S.Ct. 1459, 12 L.Ed.2d 632 (1964).

The narrow issue before this Court is whether to grant temporary injunctive relief. It is only too readily apparent that this type of relief is not available to the plaintiffs in State Court, for Iowa's highest court has just denied them temporary relief. The situation with respect to temporary relief, therefore, is not the same as the situation with respect to permanent relief insofar as it relates to equitably determining whether this Court should abstain from exercising its jurisdiction. With respect to permanent injunctive relief, there still remains the distinct possibility that the Iowa Supreme Court will interpret the statutes in question in such a manner so as to make entry into the controversy by this Court unnecessary; this is precisely the situation in which the principle of comity dictates that the federal court stay its hand—and the cases so hold. With respect to temporary in-

junctive relief, however, no possibility of relief exists for the plaintiffs in the courts of Iowa. This situation is directly analogous to the situation facing the moving party in the well established line of cases which hold that the federal court should not abstain where resort to State courts would not obviate the need of deciding the federal issue—either because the State law is clear or because resort to the State courts would not remove the federal issue for other reasons. *E. g.*, Parisi v. Davidson, *supra*; Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); Harman v. Forssenius, *supra*; Baggett v. Bullitt, *supra*.

The majority seems to be greatly disturbed that the issuance of temporary injunctive relief by this Court would interfere with the State Court proceedings. I cannot understand how this Court would in any way interfere with the proceedings before the Supreme Court of Iowa by issuing a temporary injunction running to the Attorney General. A temporary injunction would certainly not obviate the necessity of the Supreme Court deciding the issues before it, for a temporary injunction does not run indefinitely, but only *pendente lite*. Furthermore, temporary relief by this Court would not force the Supreme Court to decide the case before it differently than it would otherwise—that is, in conformity with this Court's interpretation of the federal Constitution. This is because there is a presumption that the state courts interpret statutes in a manner which will avoid federal constitutional infirmities, and there is a further presumption that this Court and the State courts are applying the same federal constitutional law. Baggett v. Bullitt, *supra*. There is also some indication from the decision of the State district court that the State courts are deciding at least the constitutional issue of vagueness. I feel that there is no clear indication that the Supreme Court is deciding the vagueness issue. But even if it is, I am confident that it will not be deterred from rendering an independent judgment on the issue, if the Justices see fit to do so, irrespective of whether this Court grants temporary injunctive relief. The fact that the high court of Iowa may decide a federal constitutional issue which is also before this Court in no way precludes the plaintiffs from raising their federal constitutional issues here, because they clearly have not voluntarily and without reservation submitted the federal issues for State-court determination. England v. Louisiana State Bd. of Medical Examiners, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed. 2d 440 (1964). And the criteria for the exercise of abstention remain the same. *See id.*

There seems to be some problem over implicit "reversal" of the Supreme Court of Iowa, should this Court grant temporary injunctive relief. Reaching a decision contrary to that reached by the highest tribunal of a State always creates disharmony between members of the State and federal judiciaries, but I know of no precept of comity dictating that a federal court abstain from action because such action might hurt the State court's feelings. If that is the law, there are countless federal decisions which should never have been rendered. The fact before us is that the Supreme Court of Iowa has denied the plaintiffs temporary relief, and there is not the slightest indication in the opinion why such a result was reached. But this Court is not asked to grant temporary injunctive relief with respect to proceedings before the Supreme Court of Iowa; this Court is asked to grant temporary injunctive relief in proceedings before it. This Court is not bound by the Iowa Code and Rules of Procedure with respect to temporary relief; it is bound by 28 U.S.C. § 2284 and Federal Rule of Civil Procedure 65. If under federal law temporary relief can be given, whereas under State law it cannot, that is just another of the many dichotomies which exist under our system of federalism. It is certainly no reason to abstain from granting temporary relief.

With respect to the course of action which I feel this Court should take, that is, abstain from deciding the merits but

grant temporary injunctive relief, I can find only one case which is factually apposite. Pearce v. Pure-Vac Dairy Products Corp., 196 F.Supp. 755 (S.D.La. 1961). But I can find no case, similar in facts, which supports the majority's decision to abstain from granting temporary relief.

The majority cites Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971), as providing "weighty precedent" for abstention. Lake Carrier's Ass'n v. MacMullan, 406 U.S. 498, 92 S.Ct. 1749, 1757, 32 L.Ed.2d 257 (1972), also cited by the majority, states:

> "First, the absence of an immediate threat of prosecution does not argue against reaching the merits of appellants' complaint. In Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L. Ed.2d 669 (1971), and Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971), this Court held that, apart from "extraordinary circumstances," a federal court may not enjoin a pending state prosecution or declare invalid the statute under which the prosecution was brought. The decisions there were premised on considerations of equity practice and comity in our federal system that have little force in the absence of a pending state proceeding. In that circumstance exercise of federal court jurisdiction ordinarily is appropriate if the conditions for declaratory or injunctive relief are met."

*Lake Carriers'* makes clear, as the majority opinion concedes, that *Younger* and *Samuels* have no direct precedential value in this factual setting. Certainly the analogy between those cases and this instant case is very tenuous, for those cases concerned direct intervention in criminal proceedings before State courts, while in the instant case the proceedings in the Iowa Court are civil (there are no criminal proceedings pending), and temporary injunctive relief here would in no way cause the proceedings before this Court to supercede proceedings in the State court.

Ignoring the shiboleth of abstention, I believe that the plaintiffs here are entitled to temporary injunctive relief under normal equitable rules governing the issuance of such relief in federal courts.

The purpose of temporary injunctive relief is the preservation of the status quo pending a final determination on the merits. Unicon Management Corp. v. Koppers Co., 366 F.2d 199 (2nd Cir., 1966), Tanner Motor Livery, Limited v. Avis, Inc., 316 F.2d 804 (9th Cir., 1963) cert. denied 375 U.S. 821, 84 S.Ct. 59, 11 L.Ed.2d 55, Pan Am. World Airways, Inc., v. Flight Engineers' Intern Assn, PAA Chapter, AFL-CIO, 306 F.2d 840 (2nd Cir., 1962).

Factors to be considered by the Court in exercising its judgment are: (1) irreparable harm to the moving party (2) the balance of conveniences between the parties in granting or denying temporary relief (3) the nature of the rights involved and the likelihood of success of the moving party. Perry v. Perry, 88 U.S.App.D.C. 337, 190 F.2d 601, 602 (1951), Commercial State Bank of Roseville v. Gidney, 174 F.Supp. 770 (D.C.D. C., 1959), affirmed 108 U.S.App.D.C. 37, 278 F.2d 871 (1960), Doeskin Products v. United Paper Co., 195 F.2d 356 (7th Cir., 1952).

Clearly the comparative severity of the injuries is the most important factor in determining whether the equities demand temporary injunctive relief. Ohio Oil Co. v. Conway, 279 U.S. 813, 49 S.Ct. 256, 73 L.Ed. 972 (1929), Love v. Atchison, Topeka and Santa Fe R. R. Co., 185 F. 321, Calagaz v. DeFries, 303 F.2d 588 (5th Cir., 1962).

In balancing the conveniences to the parties in this lawsuit I conclude that the harm resulting to the plaintiffs if this Court does not grant temporary relief is overwhelmingly greater than the harm to the defendants if the Court does grant relief. The Attorney General concedes that very substantial sums of money will be lost by the plaintiffs if they do not operate their game conces-

sions during this fair season. The fair season is very short, essentially running from only late summer to early fall; this year's season is now underway. Plaintiffs stand to lose a great deal of money in the very near future. The plaintiffs have a due process right to operate their fairs and game concessions —their business enterprises—free from interference by law enforcement officials, unless they are violating a constitutional statute that actually encompasses the activity in which they are engaged. The Supreme Court of the United States in Lynch v. Household Finance Corp., 405 U.S. 538, 92 S.Ct. 1113, 31 L. Ed.2d 424 (1972), recently stated that rights in property are basic civil rights, thus laying to rest the conjecture that a distinction exists between personal liberties and property rights with respect to civil rights jurisdiction under 28 U.S.C. § 1343(3).

There is respectable authority to the effect that a violation of personal liberties is prima facie irreparable harm under 28 U.S.C. § 1983, which plaintiffs here invoke; thus, it could be reasoned under *Lynch*, a showing of the violation of property rights is prima facie irreparable harm. Irreparable harm can also be shown, however, in cases where the moving party has no certain and adequate remedy at law. Harris Stanley Coal and Land Co. v. Chesapeake and O. Ry. Co., 154 F.2d 450 (6th Cir.1946), cert. denied 329 U.S. 761, 67 S.Ct. 111, 91 L.Ed. 656. Any remedy the plaintiffs would have at law to recover the money loss they will most probably suffer is ephemeral to say the least. I can only conclude, at this juncture, that the plaintiffs will suffer substantial and immediate irreparable harm if this Court does not issue a temporary injunction.

The resulting harm to the Attorney General and the State of Iowa if this Court should grant temporary injunctive relief is at most *de minimus*. The game concessions which are the subjects of this lawsuit have been operating at the State and county fairs for over fifty years. At no time in the past has there

ever been a serious attempt by State law enforcement officials to close them down as gambling houses, although Iowa Code Chapter 726 has been on the books since statehood. The Attorney General first thought about declaring these game concessions to be criminal activity in the fall of 1971. But not until May 25, 1972 did he seriously declare a gambling crackdown on these games. His proposed policy has been the subject of a lawsuit instituted by the plaintiffs since the middle of June. So far the Attorney General has ordered the arrest of no one involved in "games of skill" under Chapter 726, although he has stated his firm belief to this Court that many activities ordinarily pursued by citizens of this State, in addition to those at issue in this lawsuit, are criminal under Chapter 726. To say that the State has any compelling and immediate interest that would be harmed by a temporary injunction, under these facts, would be folly.

Where the harm to the plaintiff is sufficiently great, the factor of likelihood of success on the merits diminishes in importance as an equitable consideration for granting temporary relief. District 50, United Mine Workers of America v. International Union, United Mine Workers, 134 U.S.App.D.C. 34, 412 F.2d 165 (1969), Talbot v. Romney, 321 F. Supp. 458 (D.C.N.Y., 1970), Semmes Motors, Inc. v. Ford Motor Co., 429 F.2d 1197 (C.A.N.Y., 1970), Packard Instrument Co. v. ANS, Inc., 416 F.2d 943, (C.A.N.Y., 1969). Here, the harm to the plaintiffs will be very substantial if temporary relief is not granted; it, in all likelihood, will be irreparable; and the State interest in not having the temporary injunction issue is *de minimus*. Accordingly, the factor of probable success on the merits is not of great significance under these facts. Suffice it to say that in the present posture of things there is a substantial federal question involved in this lawsuit.

For these reasons, briefly stated, I would grant temporary injunctive relief to these plaintiffs, for the equities of

the situation are clearly with them. The status quo, except for the last two weeks, has been with the plaintiffs. I can see no harm resulting to the State of Iowa in preserving that status quo until these complex issues are fully and finally litigated.

The Court here finds itself in a situation where there is no definitive case authority to guide it in its decision of whether to abstain or not abstain on the question of temporary relief. I am aware of the strong policy consideration implicit in the notions of comity, abstention, and federalism. But, in my opinion none of these considerations call for the application of those principles in this case. Here is presented at the very least the prototype set of facts not precisely covered by the *Younger-Samuels-Perez-Boyle* line of cases. The majority has extended these cases to cover the instant situation where the underlying issues are still before the State Court, although there is no possibility of immediate and effective relief. I firmly believe, however, that the underlying predicate of all of the United States Supreme Court cases ordering abstention is that the relief the moving party is asking in federal court is presently and readily available to him in State court. That is simply not the case with respect to the relief for which these plaintiffs are asking here. The long and short of this matter is that the majority seizes upon inapposite cases solely because it wishes not to arouse the sensibilities of the Iowa Supreme Court. As I view matters, this is a slender reed on which to deny temporary equitable relief to litigants who will sustain grievous pecuniary injury. In the recent past in this district, a multitude of cases seeking the nullification of State statutes have been instituted by litigants who have completely ignored bringing their State issues to the State Courts before applying to the federal court. We have, of course, denied relief and abstained in those cases. In the instant case, however, the plaintiffs have diligently litigated the State issues in State court. They have exhausted every possibility for

relief presently available to them in the courts of Iowa.

I am unable to believe that a court of equity is powerless to help litigants who are alert to their rights, when no harm will be done to opposing interests by granting the relief requested. I cannot in good conscience join with the majority in denying these plaintiffs the preservation of the status quo that they have long enjoyed heretofore, absent a clear holding by the Supreme Court of the United States that this Court should abstain and sanction the imposition of grievous economic hardship on these plaintiffs.