**Leonard Paul HODORY, Plaintiff,**

v.

**OHIO BUREAU OF EMPLOYMENT SERVICES et al., Defendants.**

**No. C 75–15 Y.**

United States District Court,
N. D. Ohio, E. D.

March 5, 1976.

 

Thomas P. Lordeon, Robert M. Clyde, Jr., Fred A. Culver, Youngstown, Ohio, for plaintiff.

Richard A. Szilagyi, Asst. Atty. Gen., Columbus, Ohio, for defendants.

## MEMORANDUM OPINION AND ORDER

Plaintiff, Leonard Paul Hodory (Hodory) filed the above-captioned action, pursuant to 42 U.S.C. § 1983, on behalf of himself and all other persons similarly situated whose claims for unemployment benefits were denied or will be denied because of the operative effective of a labor dispute disqualification provision in § 4141.29(D)(1)(a) of the Ohio Revised Code.

Hodory challenged the constitutionality of § 4141.29(D)(1)(a) on the grounds that: the provision is in conflict with § 303(a)(1) of the Federal Social Security Act, 42 U.S.C. § 503(a)(1) and violates the Supremacy Clause to the United States Constitution; the labor dispute disqualification contained therein denies plaintiff and the class he seeks to represent the right to equal protection of the laws, guaranteed under the 14th Amendment to the United States Constitution; and the overbroad disqualification provision bears no real and substantial relation to the legislative purpose and constitutes a denial of due process of law guaranteed by the 14th Amendment to the United States Constitution.

Hodory requested the issuance of permanent injunctive relief to restrain the Ohio Bureau of Employment Services (Employment Bureau) and the Administrator, Albert E. Giles, from enforcing § 4141.29(D)(1)(a) and a declaration that the statute is unconstitutional. In addition, plaintiff sought past unemployment benefits for himself and the class he purports to represent which he alleged were denied by virtue of the application of that statutory provision.

This matter came on for hearing before this three-judge Court on October 23, 1975. The following are the Court's findings of fact and conclusions of law.

## I. FINDINGS OF FACT

The operative facts as set forth herein were not disputed by the parties.

Hodory was laid off from his job as a Millwright apprentice with the United States Steel Corporation (U. S. Steel), Ohio Works, in Youngstown, Ohio on November 12, 1974. He applied for unemployment benefits on November 13, 1974 and was subsequently notified by the Ohio Bureau of Employment Services (Employment Bureau) that his claim was disallowed, pursuant to § 4141.29(D)(1)(a) O.R.C.

Section 4141.29(D)(1)(a) provides, in pertinent part:

(D) Notwithstanding division (A) of this section, no individual may serve a waiting period or be paid benefits under the following conditions:

(1) for any week with respect to which the administrator finds that:

(a) *His unemployment was due to a labor dispute* other than a lockout *at any factory, establishment, or other premises* located in this or any other state and *owned or operated by the employer by which he is or was last employed; and for so long as his unemployment is due to such labor dispute* . . . (Emphasis added.)

It is clear that Hodory became unemployed through no fault of his own. He was one of approximately 1250 United Steelworkers who was laid off by either U. S. Steel or Republic Steel Corporation at their plants in Ohio because of a nationwide strike by the United Mine Workers at coal mines owned and operated by these two steel companies. The steelworkers were in no way involved in the disqualifying labor dispute between the coal miners and the steel companies nor did they benefit from that dispute.

Hodory was denied unemployment benefits from November of 1974 through January 11, 1975, at which time the coal miners' strike was apparently terminated. The Employment Bureau's sole basis for denying Hodory's application for weekly benefits during this period was that such benefits were barred under the labor dispute disqualification found in § 4141.29(D)(1)(a) O.R.C.

Hodory has taken an administrative appeal from the decision of the Employment Bureau, which appeal is still pending. It is being considered along with the appeals of the approximately 1250 other claimants similarly situated as a "group appeal" by the administrative Board of Review.

Hodory resumed his employment on March 30, 1975 and is presently employed.

During the pendency of this lawsuit § 4141.29(D)(1)(a) O.R.C. was amended to provide, in pertinent part, that:

. . . No individual shall be disqualified under this provision if: (i) HIS EMPLOYMENT WAS WITH SUCH EMPLOYER AT ANY FACTORY, ESTABLISHMENT, OR PREMISES .LOCATED IN THIS STATE, OWNED OR OPERATED BY SUCH EMPLOYER, OTHER THAN THE FACTORY, ESTABLISHMENT, OR PREMISES AT WHICH THE LABOR DISPUTE EXISTS, IF IT IS SHOWN THAT HE IS NOT FINANCING, PARTICIPATING IN, OR DIRECTLY INTERESTED IN SUCH LABOR DISPUTE . . .

This amendment, Am.Sub. Senate Bill 173, however did not become effective until December 2, 1975, and is not to be retroactively applied.

## II. CONCLUSIONS OF LAW

A. *Availability of Relief in this Court*

The first issue for this Court to consider is whether, in light of the pendency of the appellate administrative proceedings, this Court is precluded from adjudicating plaintiff's claims and from issuing injunctive relief against the defendants should the Court conclude that plaintiff is entitled to such relief on the merits of his claims.

Initially, it should be noted that there is no absolute bar in this case against the issuance of injunctive relief under the provisions of 28 U.S.C. § 2283, the Anti-injunction statute. *Mitchum v.*

*Foster,* 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972); *Gibson v. Berryhill,* 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973). The Court must, nevertheless, consider the possible applicability of certain established principles of equity, comity, and federalism which would require this Court to refrain from determining the claims for injunctive relief.

The Supreme Court has recently articulated those circumstances in which such principles may suggest that a federal court refrain from exercising jurisdiction or abstain from determining claims for injunctive relief: 1) where a party has failed to exhaust available administrative remedies; 2) where a party seeks to enjoin a pending state criminal prosecution in the absence of special circumstances as set forth in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); or where abstention and a stay in federal court is indicated to afford the state courts an opportunity to determine unsettled questions of state law prior to federal court intervention on the federal constitutional questions. *Gibson v. Berryhill, supra,* 411 U.S. at 573–574, 93 S.Ct. at 1695, 36 L.Ed.2d at 496–497.

Upon due consideration, the Court concludes that the circumstances of the present case do not present a situation where dismissal or abstention would be appropriate. While clearly the plaintiff herein has not exhausted the administrative remedies which are available under Ohio law, in *Gibson,* the Supreme Court stated specifically that administrative remedies need not be exhausted where the federal court plaintiff states a good cause of action under 42 U.S.C. § 1983.

Moreover, in the instant action, exhaustion of the available administrative remedies would in all probability prove a futile effort to vindicate plaintiff's constitutional claims in this case. Section 4141.29(D)(1)(a), on its face, would appear to except the plaintiff from unemployment benefits for the period he was laid off due to coal miners' strike. In addition, the Employment Bureau has denied benefits to plaintiff, as well as the 1250 United Steelworkers, who were similarly affected by the coal miners' strike, solely on the basis of the challenged labor dispute disqualification.

It was established at the hearing that the administrative appeal process does not permit the plaintiff to challenge the constitutionality of § 4141.29(D)(1)(a). The agency is bound by the prior Ohio court determinations as to the effect of that provision, and the Ohio courts have held the disqualification provision to be constitutional.[1] The plaintiff's failure to exhaust his administrative remedies therefore does not require a dismissal of his claims.

With regard to the Supreme Court's pronouncement in *Younger v. Harris, supra,* and the Court's subsequent decision in *Huffman v. Pursue,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), the court finds that the principles set forth in those cases do not necessitate that this Court exercise restraint in determining the issues raised herein or from issuing injunctive relief, should plaintiff be entitled to the same. While the *Huffman* decision broadens the judicially-created *Younger* doctrine to include a prohibition against federal court interference with certain ongoing *civil* proceedings in the

---

1. In an unpublished decision, the Court of Appeals of Montgomery County, Ohio, upheld the constitutionality of the provision. *Barnes v. Board of Review,* Case No. 3948 (1972). Moreover, the defendants cited to several Ohio Supreme Court cases in their brief and during oral argument in support of their position that § 4141.29(D)(1)(a) does not create an unconstitutional classification in violation of the Equal Protection clause of the 14th Amendment. *Cornell v. Bailey,* 163 Ohio St. 50, 125 N.E.2d 323 (1955); *Continental Can Company, Inc. v.*

*Donahue,* 5 Ohio St.2d 224, 215 N.E.2d 400 (1966). In *Cornell v. Bailey,* the Supreme Court noted that it was the positive intent of the Ohio General Assembly to exclude those individuals who were involuntarily unemployed as well as those voluntarily unemployed as a result of a labor dispute from benefits. The Supreme Court concluded that such determination was a legislative function and that the only relief available to an involuntarily unemployed claimant was to seek a legislative amendment to the statute.

state courts, the Supreme Court in *Huffman* made it clear that its holding was limited to the enjoining of ongoing state-initiated *judicial* proceedings and that such prohibition did not extend to an action brought under 42 U.S.C. § 1983 in which a party was challenging state administrative action in federal court. *Supra,* n. 21.

Finally, this Court concludes that abstention would not be proper in this case. Section 4141.29(D)(1)(a) is not an ambiguous statute involving unsettled questions of state law which could be rendered constitutionally inoffensive by a limiting construction in the state courts. *Daniels v. Waters,* 515 F.2d 485 (6th Cir. 1975). It has been held that "[A]bstention should not be applied merely to await an attempt to vindicate a claim of the appellant in state court." *Gay v. Board of Registration Commissioners,* 466 F.2d 879, 884 (6th Cir. 1972). In the instant case, plaintiff has not yet even reached the first level of judicial review and under § 4141.28 of the Ohio Revised Code, he is required to undertake three administrative appeals before he will be entitled to file his challenge in the state courts, where, moreover, the issue as to the constitutionality of the labor dispute disqualification has apparently been settled.

■ Accordingly, for the reasons set forth above, the Court concludes that the principles of comity, equity, and federalism do not require that this Court dismiss the instant suit or abstain from deciding the claims presented herein until such time as the state courts may have an opportunity to adjudicate the same or from issuing whatever relief may be appropriate upon its determination.

**2.** At the hearing, plaintiff stated that the claims of some 6100 Autoworkers in Youngstown, Ohio have been denied by defendants on the sole basis of the challenged disqualification provision. However, no further factual support was offered in this regard from which this Court can conclude that plaintiff's representation of these individuals in this suit would be proper under Rule 23.

**3.** The fact that plaintiff seeks the award of past unemployment benefits does not effect

**B.  *Class Certification***

■ Plaintiff, in his complaint, defined the class he purports to represent herein as all persons whose claims for unemployment benefits have been or will be denied because of the operative effect of § 4141.29(D)(1)(a). While the Court does find that class certification of the claims for injunctive and declaratory relief and past benefits is appropriate, the class as defined by plaintiff in his complaint is overbroad in light of the nature of plaintiff's claims and the requirements of Rule 23 of the Federal Rules of Civil Procedure.

The plaintiff's factual allegations and the undisputed evidence presented herein established that Hodory and approximately 1250 members of the United Steelworkers in Ohio, who became unemployed through no fault of their own, were denied unemployment benefits by defendants for a specific period of time because of the labor dispute disqualification clause in § 4141.29(D)(1)(a), despite the fact that they may have been qualified in all other respects to receive the benefits.[2] With regard to this particular group of individuals, the Court finds that the prerequisites to certification of this action as a class action under Rule 23(a) have been met, and that the class action is maintainable under the provisions of Rule 23(b)(2).[3] In light of the fact that the class is certified as a Rule 23(b)(2) class and the nature of the relief sought, the Court concludes that notice prior to the determination of the claims herein is not required.

**C.  *Constitutional Validity of § 4141.-29(D)(1)(a)***

Plaintiff has challenged the constitutionality of § 4141.29(D)(1)(a) on several

the certification of this class as a Rule 23(b)(2) class. The monetary relief is essentially in the nature of equitable relief rather than damages, and there is authority to support the maintainability of the class under 23(b)(2) in such circumstances. *Bermudez v. U. S. Department of Agriculture,* 160 U.S.App.D.C. 150, 490 F.2d 718 (1973); *see also, Pettway v. American Cast Iron Pipe Co.,* 494 F.2d 211 (5th Cir. 1974); 3B Moore's Federal Practice ¶ 23.40.

grounds. For the reasons set forth below, this Court concludes that the operative effect of that labor dispute disqualification provision violates the rights of plaintiff and the class he represents to equal protection and due process of law as guaranteed under the 14th Amendment to the United States Constitution and 42 U.S.C. § 1983.

Chapter 4141 of the Ohio Revised Code, which was enacted by the Ohio Legislature pursuant to the Federal Social Security Act, provides generally for the payment of benefits to unemployed individuals. In § 4141.29 it is indicated that the overall purpose of the legislation is to provide benefits as compensation for loss of remuneration due to *involuntary* total or partial unemployment. That provision contains a number of clauses which disqualify certain classes of unemployed individuals from receiving such benefits. In accordance with the apparent purpose of the enactment each of these classes, except one, disqualify only those individuals who become unemployed through some fault of their own.[4] Thus the provisions of § 4141.29(D)(1) reflect that an individual may not receive benefits if that person has been laid off for disciplinary reasons; or if the person quit work without just cause; or if the individual quit work to become married or because of marital, parental, filial or other domestic obligations, or became unemployed because of pregnancy; or if the person has made false statements in an attempt to obtain benefits; or if the person was discharged for dishonesty in connection with his most recent employment; or if the person has become unemployed as the result of a labor dispute. Therefore, the only class of unemployed individuals who are presently ineligible for benefits as a re-

sult of their having become unemployed involuntarily are those persons who fall within the labor dispute disqualification found in § 4141.29(D)(1)(a).[5]

A state legislature may create a classification which discriminates against certain individuals without violating the Equal Protection clause in the 14th Amendment, if that classification furthers a suitable governmental interest. *Police Department of Chicago v. Mosley,* 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972).

In the instant action, the defendants argued in their brief that the legitimate reasons for the enactment of § 4141.29(D)(1)(a) were that:

1. Granting of benefits to workers laid off due to a strike in a parent company's subsidiary plant would in effect be subsidizing the union members;

2. Granting of benefits would place the employer at an unfair disadvantage in negotiations with the unions. If the financial burden of supporting its striking union members is shifted from the unions' treasury to the State of Ohio, it's conceivable that no concerted effort to negotiate a fair settlement would be pursued until the employer reached a financial crisis, thereby yielding to unreasonable and economically unsound union demands to prevent bankruptcy;

3. The State has a legitimate purpose in protecting the fiscal integrity of its compensation fund. Strikes involving large corporations such as U. S. Steel, Republic Steel . . . and other corporate giants involve many hundreds of employees, even thousands. Benefits paid to workers resulting from labor strikes lasting for many

---

**4.** The statute was previously held constitutional in the case of *Lasko v. Garnes,* No. C 72–1350 (N.D.Ohio, decided August 14, 1973), wherein the disallowance of benefits because of pregnancy, was the basis of the challenge.

**5.** Of course, as of December 2, 1975 defendants will not be permitted to deny benefits to one unemployed due to a labor dispute unless

an element of fault—"financing, participating in, or directly interested in"—is demonstrated. However, the amendment does not moot the issues raised herein, since, as noted previously, it is not to be applied retroactively and will not effect the status of plaintiff and the class for the period during which they were denied benefits pursuant to § 4141.29(D)(1)(a).

weeks or months would deplete the unemployment fund.

The Court concludes that defendants have failed to advance reasons which would establish that the State of Ohio had a legitimate purpose for discriminating against the instant class in the payment of unemployment benefits. Each reason advanced contemplates that a union member, who is unemployed by virtue of a labor dispute between his employer and another union, has some control over, is at fault, or stands to benefit from that labor dispute. In fact, the evidence presented herein established that plaintiff and the class he represents were merely victims of the coal miners' strike, as is the case with any individual who has become unemployed because of adverse circumstances or conditions which may effect his employer's financial ability to continue to employ him. The fact that the plaintiff and the 1250 class members also happen to be union members (of a different union) is certainly no legitimate reason, standing alone, to deny them benefits. Moreover, close scrutiny of the reasons for the State's classification reveals that what the state is actually intending to prevent is not the "subsidizing" of unemployed *union members* per se, but the subsidizing of union-initiated work stoppages.

Certainly the three purposes offered by defendants would be legitimate reasons for the State's denial of benefits to unemployed members of a union which is involved in a labor dispute. However, the denial of benefits to plaintiff and the class herein in no way served the State's interest in seeking to avoid the subsidization of the coal miners' strike. Nor is it logical to conclude that payments of unemployment benefits to the *Steelworkers* would have placed U. S. Steel or Republic Steel at an unfair disadvantage in negotiations with the *coal miners' union.* Payments of funds to the steelworkers could hardly be deemed to put the coal miners in a position to refuse to negotiate with the steel companies until the companies reached a financial crisis, thereby causing the companies to yield to the unreasonable and economically unsound demands of the coal miners to prevent bankruptcy.

■ The Court finds, therefore, that the defendants have failed to demonstrate that the classification imposed by § 4141.29(D)(1)(a) is justified by a legitimate state interest under the circumstances of this case, and, accordingly, the Court concludes that the application of the labor dispute disqualification to deny benefits to plaintiff and the class certified herein is violative of the Equal Protection clause of the 14th Amendment and plaintiffs' rights as guaranteed by 42 U.S.C. § 1983.

Similarly, the Court finds that the defendants have failed to demonstrate that the application of § 4141.29(D)(1)(a) with respect to plaintiff and the class bears a real and substantial relation to a legitimate state purpose and, therefore, the statutory provision as applied in this case to deny individuals who were unemployed through no fault of their own and neither participated in nor benefited from the labor dispute involving another union and their employer, also violates plaintiffs' right to due process of law guaranteed by the 14th Amendment and 42 U.S.C. § 1983.

Since the Court has declared the application of § 4141.29(D)(1)(a) to be constitutionally invalid as to plaintiff and the class members on equal protection and due process grounds, the Court need not reach the other issues raised by plaintiff in his complaint.

### D. *Relief*

■ The Court finds that plaintiff and the members of the class of steelworkers, who were laid off for a specific period of time because of the labor dispute between their employer and the United Mine Workers and who, but for the labor dispute disqualification provision, § 4141.29(D)(1)(a), would have been entitled to collect unemployment benefits, are entitled to equitable relief in this case. Accordingly, the defendants, their agents and employees are enjoined from

continuing to enforce § 4141.29(D)(1)(a) of the Ohio Revised Code so as to deny the unemployment benefits to plaintiff and the class members which they are entitled to receive. In this regard, the defendants shall pay those past unemployment benefits which would have been provided to each otherwise qualified claimant within this class to whom such benefits were denied on the sole basis of § 4141.29(D)(1)(a).

This case is hereby terminated.

IT IS SO ORDERED.